UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MS. K, as Mother and Next Friend of S.B., a minor, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CITY OF SOUTH PORTLAND, et al., )<br>)<br>Defendants ) | Docket No. 04-275-P-S |

## MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO PERMIT PRESENTATION OF ADDITIONAL EVIDENCE

The plaintiff seeks leave to supplement the administrative record with respect to her claim under the Individuals with Disabilities Education Act ("IDEA"), specifically affidavits of herself and two others, along with attached documents, and her deposition testimony and that of four others. Plaintiff's Motion to Permit Presentation of Additional Evidence, etc. ("Motion") (Docket No. 55) at 1-3. She contends that the administrative record is "woefully incomplete, because a full hearing never took place" and that she is accordingly entitled to introduce evidence concerning S.B.'s special education needs and the defendant school system's response to those needs. *Id*. at 4. The South Portland School Department is the only one of the named defendants concerned with this motion.

**Applicable Legal Standards**

The IDEA directs that a court reviewing state educational proceedings "receive the records of the administrative proceedings" and "hear additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(B)(i) & (ii). Nonetheless, as the First Circuit has clarified, a party has no absolute right to adduce additional evidence upon request:

1

> As a means of assuring that the administrative process is accorded its due weight and that judicial review does not become a trial *de novo*, thereby rendering the administrative hearing nugatory, a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so. To determine whether this burden has been satisfied, judicial inquiry begins with the administrative record. A district court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1st Cir. 1990) (citation and internal punctuation omitted). In addition, the First Circuit has crafted a rule establishing a rebuttable presumption that witnesses who testified at the administrative hearing may not testify again in court. *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984). Witnesses are not to be allowed to repeat or embellish their prior administrative hearing testimony. *Id*. at 790.

Supplementation is allowed under certain conditions.

> The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Id*. The plaintiff invokes only the last of the four listed reasons. Motion at 4. However, her argument appears to be based primarily on the third reason, a contention that the hearing officer improperly excluded much of the evidence which she now wishes to offer. *Id*. at 4-6. With respect to her proffered testimony and that of Susan Fitzgerald, Kathleen Fries, Wendy Houlihan, Robert Packer and Sheila Godin, all of whom testified at the administrative hearing, the plaintiff also contends that this evidence should be added to the record because the administrative record has been "closed for quite some time," citing *MSAD No. 35 v. Mr. & Mrs. R*, 321 F.3d 9, 18 (1st Cir. 2003). *Id*. at 5. In that

case, however, the First Circuit's quoted language referred to the issue of timeliness in raising an issue; it cannot be used to justify the addition of evidence to the administrative record for purposes of judicial review.

### Factual Background

The hearing officer made the following factual findings which do not appear to be in dispute.

> This case involves a 17 year-old student who is eligible for special education services under the category of "multiple disabilities." His IEP provides, in part, that he receive special education transportation services. . . . He was transported to and from school in [a] school bus that carried both regular and special education students, along with special education support staff. On December 12, 2003, after getting off the school bus, the student slipped and fell while walking toward the school building. The student was seriously injured, received medical treatment and did not attend school from the time of his accident until January 5, 2004, when he returned to school in a wheelchair. On January 5, the student's transportation services changed: he was transported to and from school on a different school bus, one that carried only special education students and support staff, and was transported on a "door to door" basis. That is, he was escorted or accompanied by special education staff from the pickup point by his home to [the] bus and from the bus to the school, and assisted as needed [by] special education support staff throughout the entire trip. This level of service was provided to the student by the school from January 5, 2004 to the end of the 2003-2004 school year. The student continues to receive special education transportation service on a "door to door" basis in the 2004-2005 school year. The student no longer requires a wheelchair; he now uses a "side-walker" to assist him while walking. Currently, at the request of his mother, a special education support staff member always accompanies the student as he move[s] from place to place within the school.

Special Education Due Process Hearing Decision, Administrative Record, Vol. II, at 545. The "Statement of Facts" submitted by counsel for the plaintiff to the administrative hearing officer in connection with her request for a due process hearing refers only to this fall and to an occasion on which "the special education teachers left [S.B.] unaccompanied. He then became stuck in an elevator for an hour and became very anxious." *Id*. Vol. I at 14. In response to the question "how could this problem be resolved?" on the Dispute Resolution Request Form submitted by the plaintiff's attorney to

the Maine Department of Education which gave rise to the administrative hearing, counsel for the plaintiff responded "Jury verdict and injunctive relief." *Id*. at 90.

The "Statement of Issues" submitted by the plaintiff's representative to the hearing officer stated as follows, in its entirety:

> 1. Whether the School Department failed to provide a reasonably safe accessible walkway, in violation of the Uniform Federal Accessibility Standards (UFAS), promulgated pursuant to the A.D.A.
> 2. Whether the City of South Portland and the School Department unlawfully discriminated against [S.B.], and violated his civil rights.
> 3. Whether, as a direct and proximate result of the City and school department's negligence and discriminatory acts, their A.D.A. violation and Maine Human Rights violation, [S.B.] suffered damages, including permanent injuries.
> 4. Whether the municipality's policy, custom and practice relating to bus transportation for handicapped individuals during icy or snowy conditions [sic].
> 5. Whether the school and city deliberately ignored [Ms. K's] requests for reasonably handicapped accessible transportation.
> 6. Whether the school and city failed to train their employees in the special needs of handicapped individuals, such as [S.B.].
> 7. Whether a denial of handicap accessible transportation was the cause and moving force behind [S.B.'s] deprivation of rights secured by the U.S. Constitution, the Americans with Disabilities Act, IDEA or other pertinent and Maine Constitution [sic].
> 8. Whether, by virtue of the violations set forth above, the municipality unlawfully discriminated against [S.B.], and violated his civil rights.
> 9. Whether, as a direct and proximate cause [sic] of the Defendants' actions, [Ms. K] suffered damages, including medical expenses, serious emotional distress, as well as the loss of care, comfort and society of [S.B.].

*Id*. at 14-15. The submission identified as witnesses for the administrative hearing Susan Fitzgerald, Ms. K, S.B., "[b]us driver(s) on duty on the date of the accident," and "Special Education Teacher(s)." *Id*. at 17.

Counsel for the South Portland School Department asked the hearing officer to dismiss the request for a due process hearing on the grounds that "the primary relief sought by the family in this hearing are [sic] tort-like money damages and attorneys' fees in connection with the injuries [S.B.]

4

sustained in his fall," and that money damages are not available under the IDEA, which is the source of the special hearing officer's authority. *Id*. at 26-27. After an exchange of letter arguments and a pre-hearing conference, the hearing officer dismissed the issues numbered 1-4 and 8-9 as presented by the plaintiff "on the grounds that they are beyond the jurisdiction of the special education due process hearing officer;" dismissed issue number 7 "except to the extent it relates to rights the student may have that arise out of the IDEA or Maine special education law;" and denied the motion to dismiss the issues numbered 5 and 6, "because the hearing officer understands Issue 5 to state a claim that the student's IEP was inadequate and did not provide the student with a free and appropriate public education (FAPE), and understands Issue 6 to state a claim that the school failed to implement the student's IEP appropriately." *Id*. at 41. The hearing officer further advised that he was "inclined to think that, unless the family can show that they seek a remedy that 1) is within the jurisdiction of the hearing officer but 2) has not already been provided by the school., there is no reason to proceed with a hearing on the merits of this case. Consequently, the question of whether there is such a remedy will be the threshold issue at the hearing . . . ." *Id*.

    The hearing officer's decision presents the issues to be resolved at the hearing as follows:

> I. Is the family seeking a valid remedy that is a) within the jurisdiction of the hearing officer and b) has not already been provided by the school; and, if so,
> II. Does the student's Individualized Education Program (IEP) as it concerns special education transportation services provide a free and appropriate education (FAPE); and, if so,
> III. Was the student's IEP as it concerns special education transportation services properly implemented by the school?

*Id*. Vol. II at 546-47. He found as follows:

> At the conclusion of the hearing, it became clear that the family was not arguing that the "door to door" bus service that the student had been receiving since he returned to school on January 5, 2004 was inadequate under IDEA standards. Indeed, the family's expert witness essentially approved both the kind and level of service the school was providing. Rather, the family's argument amounted to a claim that the IEP was inadequate because it did not

5

sufficiently describe the "door to door" transportation services the school was in fact providing. The family finally articulated the remedy it was seeking: an order from the hearing officer that the student's IEP, under which he was receiving special education services from the school, be amended to more completely describe the transportation services which the school was providing.

There are several reasons why this remedial request does not justify a hearing under the circumstances present in this case. First, the student had been receiving "door to door" transportation services, with special education support staff with him throughout the entire trip, since January 5, 2004. The family has known since that date exactly what kind of transportation service the student was receiving. The school convened a PET meeting in July of 2004 to amend the IEP to reflect the fact that "door to door" services were being, and would continue to be, provided to the student. The student's mother attended this PET and participated in the discussion about the student's transportation services. . . . Second, the family made no complaint to the school about the "door to door" transportation service the student was receiving. During this period, the school asked the student's mother if she wanted to convene another PET meeting to discuss transportation issues. She declined to do so. The family has never asked the school for the remedy it now says it wants. This remedy was never mentioned in the family's request for a due process hearing, at the pre-hearing conference, or in any of its written submissions at any point in this process. The request that the IEP be modified to contain a more specific statement about transportation services was first articulated toward the end of the hearing on November 4, 2004. The school, while it has proved by its actions over the past year that it is willing to provide transportation services acceptable to the family, was never given the opportunity to do voluntarily what the family now asks the hearing officer to order it to do.

Finally, there is another fact present in this case which conclusively demonstrates the futility of the remedy the family now seeks. At the hearing, the school presented uncontradicted evidence that the family is moving out of the school district and is enrolling the student in another school. . . . Even assuming *arguendo* that the family is entitled to the order it seeks, it would be futile for this hearing officer to issue such an order a week after the student has begun attending another school, in another school district, and is currently receiving his education under a different IEP. Even if there once was a controversy between these parties that did arise out of the IDEA, there is no longer any such controversy here.

*Id.* at 550-52.

## Discussion

As the defendant school department points out, Memorandum in Opposition to Motion to Permit Presentation of Additional Evidence ("Opposition") (Docket No. 57) at 9, the plaintiff's argument that the additional evidence she seeks to submit "is needed to describe the adequacy of the special education given to SB in light of his IEP, as well as to document SB's educational needs and level of functioning," Motion at 2, does not address at all the hearing officer's conclusion, which is the matter to be reviewed by this court under the IDEA. In her reply, the plaintiff repeats the conclusory assertion that "[t]he remaining witnesses [other than the bus driver and bus aide] referenced in the Motion to Permit Presentation of Additional Evidence are needed to review the adequacy of the IEP and its remediation." Plaintiff's Reply Memorandum in Support of Plaintiff's Motion to Permit Presentation of Additional Evidence (Docket No. 58) at 7. The only assertion in the reply memorandum that possibly addresses the issue presented to this court is the statement under the heading "Conclusion" that "[a]fter the 'threshold issue' was erroneously and arbitrarily defined by the hearing officer, the entire proceeding was contaminated." *Id*. Assuming that this is the argument that counsel for plaintiff meant to make all along, the problem then becomes the fact that none of the plaintiff's submissions specifies how or why the hearing officer's determination of the threshold issue was erroneous and arbitrary. In addition, none of the plaintiff's submissions specify the remedy or remedies she was seeking from the hearing officer beyond those that may be discerned from the list in her statement of issues, which is set forth above. I can only conclude, therefore, that the hearing officer's discussion properly identified those remedies.

The plaintiff does not suggest how the additional evidence that she wishes to submit is relevant to the issue before this court; she discusses it only in the light of its relevance to the case she wanted to present to the hearing officer. Allowing the additional evidence into the record before this court

7

would be an empty exercise, because it could not properly be considered by the court. If the court were to consider such evidence, it would undercut the statutory role of the hearing officer and the goal of conserving judicial resources. The other "important concerns" identified by the First Circuit in *Roland M.* — the unfairness of allowing one party to reserve its best evidence for trial and the reasons why a proffered witness did not testify at the administrative hearing — do not appear to be implicated in this case. I conclude that the plaintiff has not satisfied her burden to provide "some solid justification," 910 F.2d at 996, for supplementing the administrative record with the additional material she has offered.

## Conclusion

For the foregoing reasons, the plaintiff's motion for leave to present additional evidence is **DENIED**.

Dated this 30th day of November, 2005.

        /s/ David M. Cohen
        David M. Cohen
        United States Magistrate Judge