# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

MS. K,                                    )
*Mother and Next Friend of S.B., a Minor*  )
                                          )
           Plaintiff,               )
                                          )
v.                                        )                    Civil No. 04-275-P-S
                                          )
CITY OF SOUTH PORTLAND, et al.,           )
                                          )
           Defendants.              )


## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SINGAL, Chief District Judge

      Before the Court is Defendants' Motion for Summary Judgment (Docket # 27).  Through this motion, Defendants seek summary judgment on ten counts of Plaintiff's eleven-count Amended Complaint (Docket # 17).[1]  For the reasons laid out below, the Court GRANTS Defendants' Motion for Summary Judgment.


## I.  STANDARD OF REVIEW

      Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable

---

[1] Count I of Plaintiff's Amended Complaint is an appeal pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  Because Plaintiff has the burden of going forward on that appeal, Defendants are not moving for summary judgment on Count I at this time.  Rather, the Court has already established a separate briefing schedule for resolving this claim (Docket #62).

law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). The court views the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. See McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).


## II. BACKGROUND

Plaintiff Ms. K is the mother of S.B., a minor. S.B. has a number of physical and mental disabilities, including cerebral palsy and cognitive deficits. Until November 2004, S.B. was enrolled in South Portland public schools. Because of his disabilities, S.B. participated in South Portland's special education program, and a Pupil Evaluation Team ("PET") was required to annually draw up an Individualized Education Program ("IEP") to address his needs, including his

transportation needs.   Throughout middle school, S.B.'s IEP called for "special education transportation," and, pursuant to this designation, S.B. was transported on a bus carrying only special education students.   (S.B.'s Individualized Education Program ("IEP") of November 4, 2003 (Ex. 1 to Docket # 43).)   This bus carried S.B. directly from his home to the Memorial Middle School's handicapped-accessible ramp.

S.B.'s IEP was not revised between the time he completed middle school and began high school.   However, during the summer of 2003, shortly before S.B. began ninth grade at South Portland High School, his mode of transportation was changed.   Sheila Godin, a bus system scheduler and dispatcher for the South Portland School Department, decided to place S.B. on a regular bus in order to reduce the time he would spend in transit.   At the time she made this decision, Ms. Godin has not seen S.B.'s IEP.   She informed Ms. K of the change, but does not recall if she spoke with anyone else regarding S.B.'s transportation.   S.B. was placed on a bus driven by Robert Packer, who was not aware that S.B. was a special education student.   S.B. sat in the front seat of the bus and got off the bus first, but otherwise received no special accommodation. The bus dropped students off some distance from the high school's main entrance.

In accordance with this transportation plan, on the morning of December 12, 2003, S.B., then a 15-year-old ninth grader, was transported to South Portland High School.   He exited the bus and, while walking toward the school, slipped and fell on a patch of ice on the sidewalk.   He suffered severe injuries leading to multiple surgeries, including a hip fusion.   When he returned to school on January 5, 2004 he was provided with door-to-door transportation.   In July of 2004, a Pupil Evaluation Team ("PET") met regarding S.B.'s IEP and amended the IEP to explicitly require door-to-door transportation.   On September 24, 2004, Ms. K filed a Dispute Resolution Request Form with the Due Process Office of the State of Maine Department of Education,

initiating a special education due process hearing.  (See K & B v. South Portland School Dept., No. 04.132H (Nov. 22, 2004) (Ex. 1 to Docket # 1) at 1.)  She alleged that the South Portland School Department violated a number of S.B.'s constitutional, statutory, and common-law rights.  Id. at 6.

At the pre-hearing conference before a Due Process Office hearing officer on October 19, 2004, the South Portland School Department made a motion to dismiss Ms. K's administrative complaint, and the hearing officer gave both parties an opportunity to submit written arguments on the motion.  Id. at 3.  As a result of these written submissions, the hearing officer dismissed a number of the issues contained in Ms. K's "Statement of Issues."  Id.

On November 4, 2004, the hearing officer conducted a hearing on the remaining issues. He issued his nine-page report, finding against the Plaintiff, on November 22, 2004.  As explained in the report, the hearing officer determined that a number of the remedies sought by the Plaintiff, including monetary damages, injunctive relief, attorney's fees, and rulings on constitutional rights, were beyond the hearing officer's jurisdiction.  With respect to Plaintiff's request that S.B.'s IEP be amended to clarify that S.B. was entitled to door-to-door transportation, the hearing officer found that the present IEP was clear as to the services that S.B. was to receive.  Id. at 8.  In addition, the hearing report noted that the family moved out of the South Portland School District a week prior to the decision being issued.  Id.  In light of this change in circumstances, the hearing officer declined to reach the merits of the request for amendment of the IEP, noting that it would be futile to order South Portland to make changes to S.B.'s IEP when S.B. was attending school in another district and was covered under another IEP.  Id. at 8-9.

On December 15, 2004, Plaintiff filed her Complaint (Docket # 1), which alleged that, by moving S.B. off the special education bus and allowing him to walk over an icy sidewalk from the regular bus into the high school, various defendants had violated the Individuals with Disabilities in Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, 42 U.S.C. § 1983, the Maine Civil Rights Act, and 42 U.S.C. § 1985.  It also claimed that these defendants had acted negligently, breached their contract with Plaintiff, deprived Plaintiff of S.B.'s consortium, and violated Plaintiff's due process and equal protection rights.  On March 21, 2005, Plaintiff filed an Amended Complaint (Docket # 17), which clarified that Plaintiff was pressing the above claims against the following Defendants:  the City of South Portland; the South Portland School Department; Kathleen Fries, Director of Special Education for the South Portland School Department; Wendy Houlihan, Superintendent of the South Portland School Department; Philip Thompson, a special education teacher at South Portland High School; and Robert Packer, a bus driver for the South Portland School Department (together, "Defendants").

Defendants now seek summary judgment in their favor on all but one of Plaintiff's eleven claims thereby reserving only the IDEA claim for a separate determination by the Court.


## III. DISCUSSION

### A.  Americans with Disabilities Act (Count III)

To recover under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 et seq., a Plaintiff must show that he

> (i) is a qualified individual with a disability; (ii) was excluded from participation in, or denied the benefits of, a public entity's services, programs or activities or was otherwise discriminated against; and (iii) the exclusion or denial of benefits was by reason of disability.

Badillo-Santiago v. Andreu-Garcia, 70 F. Supp.2d 84, 89 (D.P.R. 1999).

Here Plaintiff seeks compensatory damages, which are available only in cases of intentional discrimination.  See, e.g. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 126 (1st Cir. 2003).  Plaintiff agrees with the Defendants that this Count is "rooted in the concept of purposeful or intentional discrimination."  (Pl.'s Resp. in Opp'n (Docket # 42) at 13.)  A plaintiff can demonstrate intentional discrimination by showing personal animosity or discriminatory animus. See Ferguson v. City of Phoenix, 157 F.3d 668, 675 (9th Cir. 1998).  Alternatively, a plaintiff can show intentional discrimination by acting with "at least deliberate indifference to the strong likelihood that a violation of federally protected rights [would] result."  Bartlett v. New York State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir. 1998).

Defendants argue that "there is no evidence in this record that any of the Defendants engaged in intentional discrimination."  (Defs.' Mot. For Summ. J. (Docket # 27) at 20.)  In fact, in her response to Defendant's Motion for Summary Judgment, Plaintiff does not allege a single material fact that would point to intentional discrimination, and claims only that Defendants failed to provide an accessible walkway.[2]  Thus, the Court concludes that there is not evidence that would allow a reasonable jury to find intentional discrimination and thereby award Plaintiff compensatory damages on the ADA claim.

Moreover, the icy sidewalk alone does not constitute a violation of the ADA.  The icy sidewalk that led to S.B.'s unfortunate injury constituted a hazard for the disabled and non-disabled alike, and did not rise to the level of a permanent barrier to the disabled.  Therefore, the conditions under which S.B. was injured are not analogous to the conditions found in Parker v. Universidad

---

[2] Moreover, compensatory damages generally are not available for claims under Title II of the ADA if those claims are based upon an underlying violation of the IDEA.  See Nieves-Marquez, 353 F.3d at 125.  Although not discussed at length by the parties, to the extent that any of Plaintiff's ADA claims are rooted in the notion that Defendants did not comply with the IDEA, the Court finds that compensatory damages are not available on Plaintiff's ADA claim.

de Puerto Rico, 225 F.3d 1 (1st Cir. 2000) (recognizing recovery for personal injury damages under the ADA over a permanently inaccessible walkway).  Absent any evidence creating a trialworthy issue as to this ADA claim, the Court GRANTS Summary Judgment to all of the Defendants on Count III.[3]

### B.  Section 504 of the Rehabilitation Act (Count II)

To prevail on a claim under Section 504, a plaintiff must establish that

(1) he is a "handicapped individual"; (2) he is "otherwise qualified" for participation in the program; (3) the program receives "federal financial assistance"; and, (4) he was "denied the benefits of" or "subject to discrimination" under the program.

Darian v. University of Mass. Boston, 980 F. Supp. 77, 84-85 (D. Mass. 1997) (internal citations omitted).

A claim brought under Section 504 is interpreted in the same manner as a claim brought under the ADA.  See, e.g., Theriault v. Flynn, 162 F.3d 46, 48 n.3 (1st Cir. 1998).  Following the ADA analysis above, the Court similarly fails to find any evidence of intentional discrimination. Thus, the Court GRANTS Summary Judgment to the Defendants as to Count II.

### C.  42 U.S.C. § 1983 (Count VII)

Under 42 U.S.C. § 1983, Defendants will be liable if Plaintiff can demonstrate "a direct causal link" between a "policy or custom" of the School Department and an alleged

---

[3] Even if a trialworthy issue were to exist on Plaintiff's ADA claim, the Court would grant summary judgment on behalf of the individual employee defendants.  The guidance of the courts in neighboring circuits suggests that the ADA does not authorize a cause of action against the individual employee defendants in this case.  See Gough v. E. Me. Dev. Corp., 172 F. Supp. 2d 221, 224 (D. Me. 2001) (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir.1995); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir.1996); Lissau v. S. Food Serv., Inc., 159 F.3d 177, 181 (4th Cir.1998); Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir.1999); Wathen v. Gen. Elec. Co., 115 F.3d 400, 405 (6th Cir.1997); Silk v. City of Chicago, 194 F.3d 788, 797 n. 5 (7th Cir.1999); Spencer v. Ripley County State Bank, 123 F.3d 690, 692 (8th Cir.1997); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587-88 (9th Cir.1993); Butler v. City of Prairie Village, Kan., 172 F.3d 736, 744 (10th Cir. 1999); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.1991); Gary v. Long, 59 F.3d 1391, 1399 (D.C.Cir.1995)).

constitutional deprivation.  City of Canton v. Harris, 489 U.S. 378, 385 (1989).  Liability can

stem from an actual policy, a custom, or a municipality's failure to train its employees.  Plaintiff

initially argues that the Defendants are liable because they are violating three actual municipal

policies: "1) the IEP; 2) the written policy requiring transport of special education students in

accord with PET recommendations; and 3) the written policy requiring supervision of all

students at all times."  (Pl.'s Resp. in Opp'n (Docket # 42) at 7.)  Defendants properly note that

under § 1983, a Plaintiff must point to a policy, not a violation of a policy, as the source of the

constitutional violation in order to attach liability.  Plaintiff here fails to do so, and thus this

Court does not find any liability stemming from a policy of the Defendants.

Plaintiff also claims that there is municipal custom in place that is directly linked to a

violation of S.B.'s constitutional rights.  For liability to stem from a custom, the custom "must be

attributable to the municipality" and must also "be so well settled and widespread that the

policymaking officials of the municipality can be said to have either actual or constructive

knowledge of it yet did nothing to end the practice."  Bordanaro v. McLeod, 871 F.2d 1151,

1156 (1st Cir. 1989) (citations omitted).  The custom must also have been both "the cause of and

the moving force behind the deprivation of constitutional rights."  Id.

Plaintiff's claim that Defendants had a custom of moving all non-wheelchair bound high

school students to non-wheelchair buses stems almost entirely from the deposition of Sheila

Godin.  Plaintiff argues that Godin testified that "in the past, she has routinely taken special

education children on the wheelchair bus and switched them to regular busing."  (Pl.'s Statement

of Material Fact (Docket # 38) at ¶10).  Plaintiff also argues that the decision to change S.B.'s

bus assignment "was made without any authorization from the special education director or the

Pupil Evaluation Team (PET)."  (Pl.'s Statement of Material Fact (Docket # 38) at ¶57).  These

arguments mischaracterize and overstate Godin's testimony.[4]  Taken in a light most favorable to the Plaintiff, at most, Godin's testimony establishes that she sought to shorten the length of time students spent commuting on the school bus.

Plaintiff also does not address Defendants' repeated contention that a wheelchair accessible bus is not the only form of "special education" transportation, and that sitting in the front seat of a bus, and exiting the bus first, is also a form of "special education transportation." Even assuming the truth of Plaintiff's allegation that only high school students utilizing wheelchairs were assigned to ride the wheelchair accessible buses, this practice does not constitute a municipal custom of denying any form of special education transportation to all students who qualify for it.  Special education transportation could involve placing students on non-wheelchair buses with additional accommodations or assistance.[5]  In short, the Court does not find that a custom existed that would give rise to liability under § 1983.

Finally, Plaintiff also alleges that the South Portland School Department violated § 1983 by failing to train its employees in providing handicapped-accessible transportation.  (Pl.'s Am. Compl. (Docket # 17) at 9.)  For liability to stem from failure to train, the Plaintiff must show an actual policy of inadequate training, where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  City of Canton, 489 U.S. at 390.  To prevail on a § 1983 claim based on inadequate training, Plaintiff must also demonstrate that a municipality deliberately chose an inadequate

---

[4] In response to a question asking her whether there were "instances prior to the decision in this case to switch S.B. in which you made that decision to take somebody from a wheelchair bus to a regular bus without checking with somebody from special ed?"  Godin responded "No, I generally check with somebody.  I just don't recall all the times who I'm checking with and [sic] right at this moment."  (Dep. of Sheila Godin (Ex. 1 to Docket # 37) at 60.)

[5] This could include having a student sit in the front seat of the bus, placing an educational aid on the bus, or allowing a student to exit the bus first.

training program.  Id. at 427.  Plaintiff fails to do so.  Absent any showing of previous harm arising from this training policy, or any evidence of deliberation on the school department's part, Plaintiff fails to demonstrate an issue of material fact as to whether the Defendants actually chose a policy with deliberate indifference toward special education children.

As Plaintiff does not demonstrate a constitutional violation that can be causally linked to an actual policy, custom, or failure to train, the Court GRANTS Defendants summary judgment on Count VII.[6]


### D.  Maine Civil Rights Act (Count V)

Claims brought under the Maine Civil Rights Act ("MCRA"), 5 M.R.S.A. § 4681 et. seq., are interpreted in the same manner as claims brought under 42 U.S.C. § 1983, as the state statute is modeled upon the federal.  See, e.g, Jenness v. Nickerson, 637 A.2d 1152, 1158 (Me. 1994); Forbis v. City of Portland, 270 F. Supp. 2d 57, 61 (D. Me. 2003).  Plaintiff, having failed to demonstrate a policy, custom, or policy of failure to train that could lead to recovery under § 1983, similarly fails to create a trialworthy issue under the MCRA.  The Court therefore GRANTS Defendants summary judgment on Count V.[7]

---

[6] As the Court has already found for the Defendants on this Count, there is no need to reach the issue of qualified immunity.  However, the Court does find that all of the individual defendants in this case enjoy qualified immunity from liability on Count VII.  Officials enjoy such immunity so long as their conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The Court finds no such violation of clearly established rights in this case.

[7] The Court's qualified immunity analysis is also identical.  Government officials entitled to qualified immunity under § 1983 are likewise entitled to qualified immunity under the MCRA.  Jenness, 637 A.2d at 1159.  Having found that the individual defendants would be entitled to qualified immunity under § 1983, the Court similarly finds that such defendants would be entitled to qualified immunity under the MCRA.

### E.  Negligence (Count VI)

Plaintiff seeks to recover for Defendants' alleged negligence in transporting S.B. and negligence in maintaining the sidewalk where S.B. was injured.  Before reaching the question of negligence, the Court must first determine whether Defendants enjoy immunity from such claims.

Under the Maine Tort Claims Act, 14 M.R.S.A. § 8101-A(4), governmental entities are not liable "for any defect, lack of repair or lack of sufficient railing" on sidewalks.  In addition, Maine statute provides that:

> No town is liable to an action for damages to any person on foot on account of snow or ice on any sidewalk or cross-walk nor on account of the slippery condition of any sidewalk or crosswalk.

23 M.R.S.A. § 3658.

Plaintiff argues that Defendants' actions fall under two exceptions to these statutory grants of immunity: 14 M.R.S.A. § 8104-A(1)(A), which makes a governmental entity liable "for its negligent acts or omissions in its ownership, maintenance or use of any" motor vehicle, and 14 M.R.S.A. § 8104-A(2), which creates liability for a governmental entity's "negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building."  Neither of these exceptions apply in this case.

Maine courts have consistently held that paved walkways, including sidewalks and fire lanes used for pedestrian traffic, are not appurtenances.  See Campbell v. Washington County Technical College, 1999 U.S. Dist. Lexis 16842, *7-*12 (D. Me. 1999), aff'd 219 F.3d 3 (1st Cir. 2000); O'Keefe v. Maine Technical College Systems, 1999 Me. Super. Lexis 99, *3-*5 (Me. Super. Ct. 1999).  S.B. was injured on a sidewalk near a public school.  As a sidewalk does

not constitute an appurtenance, Defendants retain their immunity and cannot be found liable for failing to clear snow or ice from the sidewalk.

There is also no indication that there was any negligence in the ownership, maintenance, or use of the school bus that deposited S.B. at school. Plaintiff has not alleged any negligence in ownership or maintenance, but instead contends that Defendants' failure to use a ramp or wheelchair bus constitutes negligent operation or use. The Court disagrees. Notwithstanding the wisdom of transporting S.B. on a non-wheelchair bus, by all accounts the bus and its equipment were used exactly as they were intended to be used, and thus there is no trialworthy allegation of negligence.

For these reasons, the Court GRANTS Defendants summary judgment on Count VI.


**F. Loss of Consortium (Count VII)**

Although Plaintiff claims damages stemming from the loss of consortium of her son, Maine law allows for recovery under such claims only for the loss of a spouse. See 14 M.R.S.A. § 302. As such, Plaintiff cannot recover under Section 302. In her response to Defendants' Motion for Summary Judgment, Plaintiff also attempts to make out a claim for loss of services under 14 M.R.S.A. § 303. (See Pl.'s Argument in Opp'n to Defs.' Mot. for Summ. J. (Docket # 42) at 6.) The Court questions the timeliness of this claim, and additionally finds it to be without merit. Section 303 allows a parent to "maintain an action for loss of the services or earnings" of a child. Here Plaintiff has not created any issue of material fact that could lead the Court to find that S.B. performed any services or collected any earnings.

Absent a trialworthy issue, the Court GRANTS Defendants summary judgment as to Count VII.

### G.  Due Process (Count VIII)

Federal and state laws concerning special education outline the procedures a school district must follow in conducting a special education due process hearing.  See 20 U.S.C. § 1415 et seq.; 20-A M.R.S.A. § 7202 et seq.  Generally, any person claiming violations of federal and state requirements for special education is entitled to a due process hearing in which she is afforded "the opportunity to respond, explain, and defend."  Gorman v. University of Rhode Island, 837 F.2d 7, 12-13 (1st Cir. 1988).

Plaintiff's complaint seeks relief for due process violations, and complains that her right to be heard was violated when the hearing officer "dismissed the appeal for lack of jurisdiction because the school had allegedly already remedied the IEP problems."  (Pl.'s Argument in Opp'n to Defs.' Mot. for Summ. J. (Docket # 42) at 17.)  This is not an accurate description of the hearing officer's actions.  The hearing officer stated that he was unable to reach the merits of the argument because he had no remedy available to him - the family had already moved outside the school district before the opinion issued.  (See K & B v. South Portland School Dept., No. 04.132H (Nov. 22, 2004) (Ex. 1 to Docket # 1) at 1.)  Plaintiff was given an opportunity respond, explain, and defend her position at both the pre-hearing conference and the hearing itself.  As such, this Court finds that Plaintiff did receive due process with respect to S.B.'s due process hearing.  For this reason, the Court GRANTS Defendants summary judgment as to Count VIII.

### H.  Equal Protection (Count IX)

In order to prevail on a claim alleging a violation of the Equal Protection Clause of the United States Constitution, a plaintiff must prove intentional or purposeful discrimination based

upon his or her disability.  See Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997), cert. denied, 522 U.S. 819 (1997).  First, Plaintiff must show that persons who were similarly situated to S.B. "in all relevant respects" were treated differently from him because of an unconstitutional classification.  Barrington Cove Ltd. Partnership v. Rhode Island Hous. & Mortgage Fin. Co., 246 F.3d 1, 8 (1st Cir. 2001).  In addition, Plaintiff must show that Defendants "selected or reaffirmed a course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'" Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979).

Plaintiff has identified the group of similarly situated persons as special education students who were not wheelchair bound; Plaintiff alleges that these students "were intentionally and purposefully denied access to special education transportation."  (Pl.'s Argument in Opp'n to Defs.' Mot. for Summ. J. (Docket # 42) at 15.)

As a first hurdle, Plaintiff fails to allege that Defendants have been treating differently "persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Plaintiff argues that by being moved to the regular bus S.B. and all other non-wheelchair bound special education students were treated differently from all other similarly situated students.  While Plaintiff does not clearly identify who these other similarly situated students are, it appears that Plaintiff is suggesting that non-wheelchair bound special education students are in all relevant respects similarly situated to wheelchair bound special education students and, thus, both groups should have been transported in the same manner.  Quite simply, when it comes to transportation, all special education students capable of walking are not categorically the same as special education students who utilize wheelchairs.  Thus, at the most basic level, Plaintiff has failed to demonstrate a genuine issue as to whether S.B. and other special educations students who were

moved to regular busing were being treated differently because of an unconstitutional classification.

Even if Plaintiff had cleared this first hurdle, she still fails to meet a second element required to survive the summary judgment motion.  Namely, Plaintiff fails to identify any evidence that might demonstrate that Defendants sought to move S.B. or any other special education students from handicapped-accessible buses "because of" the adverse effect the move would have on such students, as required under <u>Soto</u>, 103 F.3d at 1067-68.  At most, Plaintiff has demonstrated that the school bus dispatcher moved special education students onto so-called "regular school buses" to reduce the time the children spent in transit or to "mainstream" them. (Pl.'s Argument in Opp'n to Defs.' Mot. for Summ. J. (Docket # 42) at 16.)  There is no evidence that Defendants sought to move special education children to "regular school buses" because of any increased likelihood that children would be adversely affected by their new placements.

As such, Plaintiff fails to demonstrate any issue of material fact on the issue of equal protection, and the Court GRANTS Defendants summary judgment as to Count IX.

**I.   42 U.S.C. § 1985 (Count X)**

Plaintiff alleges that Defendants violated 42 U.S.C. § 1985 by engaging in a conspiracy to deprive S.B. of his due process and equal protection rights.  The Court has already determined that Plaintiff cannot prove a violation of S.B.'s rights to due process and equal protection in this case.  For that reason, the Court has ruled that Defendants are entitled to summary judgment on Plaintiff's due process (Count VIII) and equal protection (Count IX) claims.  In light of these rulings, it is clear that Plaintiff's claims of a conspiracy to commit these violations is without merit.

In addition, Defendants have also argued that they are entitled to judgment on Count X as a matter of law since the named Defendants are not separate legal entities and a single legal entity cannot form a conspiracy with itself.  See Hillard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994) (finding widespread agreement that school boards, administrators and employees are part of a single legal entity); Faucher v. City of Auburn, 465 A.2d 1120, 1120 fn.* (Me. 1983) (noting that Maine courts have found a city and its school department are a single legal entity). The Court notes that it would alternatively find the Defendants were entitled to summary judgment on Count X on this basis even if it found that Plaintiff's claims for violations of due process and equal protection could survive summary judgment.

For these reasons, the Court GRANTS Defendants summary judgment on Count X.

**J.  Breach of Contract (Count XI)**

Plaintiff encounters a similar problem with respect to Count XI.  Plaintiff's Amended Complaint contends that the South Portland School Department has breached the transportation contract, either express or implied, that it holds with each of its students.  Defendants offer extensive detailed analysis, well supported by considerable case law, in arguing that there existed neither an express nor an implied contract between S.B. and the South Portland School Department.  (Defs.' Mot. For Summ. J. (Docket # 27) at 16-18.)  Defendants also offered specific precedent demonstrating that an IEP is not a legally binding contract (See Carter v. Florence, 17 EHLR 452 (D.S.C. 1991); Parents v. Bangor School Department, Case No. 01.281, http://www.maine.gov/education/speced/2001%20hearings/01281%20doc.doc).

The Court finds Defendants' analysis entirely persuasive.  Plaintiff's response fails to create a trialworthy issue regarding the existence of an enforceable contract between the parties.

16

In light of this failure, there is no doubt that Defendants are entitled to summary judgment as to Count XI.

## IV. CONCLUSION

As explained above, the Court hereby GRANTS Defendants' Motion for Summary Judgment (Docket # 27) and ORDERS that summary judgment be entered in favor of Defendants on Counts II through XI.

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 3rd day of January, 2006.