UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| Ms. K, as Mother and Next Friend of<br>S.B., a minor,<br><br>          *Plaintiff*<br><br>v.<br><br>CITY OF SOUTH PORTLAND, et al.,<br><br>          *Defendants* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | *Docket No. 04-275-P-S* |

*RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW*

Ms. K, whose son, S.B., was eligible for special education services at all relevant times, challenges a decision of a Maine Department of Education hearing officer ("Hearing Officer") in favor of the School Department of the City of South Portland, ruling that he lacked jurisdiction to provide the plaintiff with the relief that she sought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and Maine's laws regarding education of exceptional students, 20-A M.R.S.A. § 7001 *et seq. See* Plaintiff's Brief (Docket No. 63) at 1; Amended Complaint (Injunctive Relief Requested) (Docket No. 17) ¶¶ 34-41.[1] After reviewing the administrative record filed in this case and the memoranda of the parties,[2] I recommend that the court adopt the following findings of fact and conclusions of law, on the basis of which I recommend that judgment be entered in favor of the defendants on Count I.

---

[1] This claim is presented in Count I of the Amended Complaint. Summary judgment has been entered in favor of the defendants on all other counts. Order on Defendants' Motion for Summary Judgment ("Summary Judgment Order") (Docket No. 64) at 17.

1

**Recommended Findings of Fact**

1.      S.B. qualifies as a student with a disability under the IDEA. Administrative Record ("Record") at 541 (Stipulation 1).

2.      S.B.'s Individualized Education Plan ("IEP") provided that he would receive special education transportation services. *Id*. at 119.

3.      On December 12, 2003 S.B. was injured as a result of a fall on ice outside of South Portland High School, where he was a student. *Id*. at 109 (Incident Report), 545 (Hearing Officer Decision). He rode to school on the regular school bus that day. Transcript of Special Education Due Process Hearing ("Transcript"), *[K] & [B] v. South Portland School Department*, Case No. 04-132H (Me. Dep't of Educ.), at 91-92 (Testimony of Kathleen Fries).[3] S.B. missed 6 school days as a result of the injury and returned to school in a wheelchair. Record at 541 (Stipulation 3).

4.      After S.B. returned to school, he was picked up at his family's home in the morning by a special education bus and delivered to the school doors, and in the afternoon he was picked up at the school doors. Transcript at 77 (Testimony of Kathleen Fries). While he was confined to a wheelchair, an educational technician would meet S.B. at the lift on the bus and wheel him from the bus into his classroom. *Id*. at 85-86. After he began using a side-walker, S.B. was met at the school bus by an aide and accompanied into his classroom. *Id*. at 78. In the afternoon, the aide accompanied him to the door of the bus and made sure that he got on safely. *Id*.

5.      Kathleen Fries, who is Special Education Director for the South Portland School Department, Record at 25, 67, notified the plaintiff of these transportation arrangements by telephone and by letter soon after the accident. Transcript at 88. The plaintiff's expert witness testified at the

---

[2] I denied the plaintiff's motion for leave to present additional evidence. Docket No. 59.
[3] For ease of reference, I shall refer to the transcript of the due process hearing, contained at pages 560-611 of the Record, as "Transcript," citing the consecutively numbered pages of the Transcript itself rather than Record pages.

hearing that this arrangement "would be an adequate short term solution" for S.B.  *Id*. at 227-31 (Testimony of Susan Fitzgerald).  The words "monitor door to door" were added to S.B.'s IEP after the accident.  *Id*. at 97 (Testimony of Kathleen Fries).

6.  The plaintiff was offered the opportunity to convene a Pupil Evaluation Team ("PET") meeting to consider any changes she might want to S.B.'s IEP but after she was informed about the changes in the transportation arrangements she did not think that a PET meeting was necessary.  *Id*. at 88.

7.  On September 20, 2004 S.B. was unaccompanied when the school elevator in which he was riding became stuck for up to an hour.   Record at 94 (Incident Report).

8.  On September 24, 2004 the plaintiff filed a Dispute Resolution Request Form with the Maine Department of Education describing the nature of the problem as follows: "Inadequate transportation of special education student after snowstorm — severe injuries — inadequate IEP, failure to follow ADA, Rehab Act, IDEA, Common Law."  *Id*. at 2.  In response to the question "How could this problem be resolved?" the plaintiff wrote "Jury verdict and injunctive relief."  *Id*.

9.  Counsel for the defendant wrote to counsel for the plaintiff offering a PET meeting and noting that since the elevator incident the school had ensured that an adult rode in the elevator with S.B. at all times, as the plaintiff had requested.  *Id*. at 21, 22 (Letter from Amy K. Tchao to Peter Clifford dated October 15, 2004).

10.  Counsel for the plaintiff submitted the following Statement of Issues for which the plaintiff sought relief from the hearing officer assigned to her dispute resolution request:

> 1. Whether the School Department failed to provide a reasonably safe accessible walkway, in violation of the Uniform Federal Accessibility Standards (UFAS), promulgated pursuant to the A.D.A.
>
> 2. Whether the City of South Portland and the School Department unlawfully discriminated against [S.B.], and violated his civil rights.

3

    3. Whether, as a direct and proximate result of the City and school department's negligence and discriminatory acts, their A.D.A. violation and Maine Human Rights violation, [S.B.] suffered damages, including permanent injuries.

    4. Whether the municipality's policy, custom and practice relating to bus transportation for handicapped individuals during icy or snowy conditions. [sic]

    5. Whether the school and city deliberately ignored [Ms. K's] requests for reasonably handicapped accessible transportation.

    6. Whether the school and city failed to train their employees in the special needs of handicapped individuals, such as [S.B.].

    7. Whether a denial of handicap accessible transportation was the cause and moving force behind [S.B.'s] deprivation of rights secured by the U.S. Constitution, the Americans with Disabilities Act, IDEA or other pertinent [sic] and Maine Constitution.

    8. Whether, by virtue of the violations set forth above, the municipality unlawfully discriminated against [S.B.], and violated his civil rights.

    9. Whether, as a direct and proximate cause [sic] of the Defendants' actions, [Ms. K] suffered damages, including medical expenses, serious emotional distress, as well as the loss of care, comfort and society of [S.B.].

*Id.* at 14-15 (enclosure to letter from Peter Clifford to Peter Stewart dated October 7, 2004).

    11.    The defendant asked the hearing officer to dismiss the hearing request on the grounds that it failed to state a claim for relief under the IDEA. *Id*. at 26-28 (Letter from Amy K. Tchao to Peter Stewart dated October 18, 2004). After a pre-hearing conference on October 19, 2004, the hearing officer issued a Pre-Hearing Order in which he granted the defendant's motion to dismiss issues numbered 1-4 and 8-9 in the plaintiff's statement of issues on the grounds that "they are beyond the jurisdiction of the special education due process hearing officer." *Id*. at 41 (Pre-Hearing Order). He also granted the motion as to issue number 7 "except to the extent it relate to rights the student may have that arise out of the IDEA or Maine special education law." *Id*. The plaintiff does not take issue

with this limitation of the issues in the present action. Indeed, all of the issues excluded by the hearing officer were raised in the plaintiff's complaint in this action in the counts that were the subject of the recently-decided motion for summary judgment. *See* Complaint ¶¶ 42-84; Summary Judgment Order at 5-17.

      12. The Pre-Hearing Order also provides as follows:

> Further, as discussed at the pre-hearing conference, the hearing officer is concerned about the remedial aspect of this case. At this point, the hearing officer is inclined to think that, unless the family can show that they seek a remedy that 1) is within the jurisdiction of the hearing officer but 2) has not already been provided by the school, there is no reason to proceed with a hearing on the merits of this case. Consequently, the question of whether there is such a remedy will be the threshold issue at the hearing on November 4, 2004.

Record at 41.

      13. The administrative hearing was held on November 4, 2004. Transcript. When asked to identify the relief sought in the hearing by the plaintiff, counsel for the plaintiff replied:

> The remedy is a legal requirement, a legal duty, that is reflected in a legal document that protects [S.B.]. Not an off-the-record, this is the way we do it, but we're not going to write it down, approach, which is what is happening here. Under the IDEA we are entitled to have all of the duties that are set forth on Page 21 put in writing and entitled to hold the school to those promises and those obligations. And if it's not in writing, we can't enforce it. And if we can't enforce it, there's no. [sic] . . . And your failure to acknowledge that these things need to be in writing in the IEP is error in my opinion.

*Id*. at 154-55. "Page 21" is identified by the defendant as page 76 of the Record. Memorandum of Defendant South Portland School Department in Opposition to Plaintiff's Appeal of Decision of Administrative Hearing Officer ("Opposition") (Docket No. 65) at 6 n.1. The plaintiff does not dispute this identification.

14. Page 76 of the Record is the second page of a memorandum written by Fries entitled "Follow-up on Power Outage and Elevator Incident/[S.B]/South Portland High School/September 24 2004," which lists the following conclusions:

> 1. [S.B.] was following his IEP as written when the elevator incident occurred. There is no discussion in PET minutes that [S.B.] would need adult support when moving around the building with his walker. PET minutes support [S.B.'s] independence in moving about the building alone.
>
> 2. Staff followed [S.B.'s] IEP in carrying out his program.
>
> 3. Staff took appropriate steps to inform his mother promptly when the power outage occurred.
>
> 4. Staff took appropriate steps to ensure [S.B.'s] safety during the outage by providing supports while he was in the elevator, summoning the fire department for help, and debriefing with [S.B.] afterwards to ensure that he felt safe and secure.
>
> 5. Staff went beyond the recommendations of the PET after the incident by assuring [Ms. K] that [S.B.] would have adult support when using the elevator. Given [Ms. K's] anxiety following the incident, this appears to be an appropriate step.

Record at 75-76.

15. The hearing officer stated that the issues presented for resolution at the administrative hearing were "whether the IEP was inadequate in regards to transportation on its face, and . . . whether the IEP was inadequately implemented with regards to transportation." Transcript at 7. He insisted that the proceeding begin with the threshold issue identified in his Pre-Hearing Order. *Id*. at 6.

16. In his decision, the hearing officer stated the issues to be resolved at the hearing as follows:

> I.      Is the family seeking a valid remedy that is a) within the jurisdiction of the hearing officer and b) has not already been provided by the school; and, if so,

> II.      Does the student's Individualized Education Program (IEP) as it concerns special education transportation services provide a free and appropriate education (FAPE); and, if so,
>
> III.     Was the student's IEP as it concerns special education transportation services properly implemented by the school?

Record at 546-47.

17.     The hearing officer concluded that he did not have the ability under the IDEA to issue the remedy sought by the plaintiff. *Id*. at 549. He stated, in relevant part:

> At the conclusion of the hearing, it became clear that the family was not arguing that the "door to door" bus service that the student had been receiving since he returned to school on January 5, 2004 was inadequate under the IDEA standards. Indeed, the family's expert witness essentially approved both the kind and level of service the school was providing. Rather, the family's argument amounted to a claim that the IEP was inadequate because it did not sufficiently describe the "door to door" transportation services the school was in fact providing.

*Id*. at 550. He noted that the family had been aware that the defendant was providing "door to door" transportation services since January 2004 and that the plaintiff had attended a PET meeting in July 2004 that was convened expressly to amend the IEP to reflect the fact that such services were being provided; that the family made no complaint about these services; and that the plaintiff had never asked for the specified remedy until the administrative hearing, making it impossible for the defendant to have provided it voluntarily. *Id*. at 551. He also relied on "uncontradicted evidence" that the family "is moving out of the school district and is enrolling the student in another school," where the student would begin classes on November 15, 2004, before the hearing officer's opinion issued on November 22, 2004. *Id*. at 551-52. Thus, reasoned the hearing officer, it would be futile for him to issue an order granting such relief a week after the student had begun attending a different school in a different school district. *Id*. He accordingly dismissed the case with prejudice. *Id*. at 552.

## Proposed Conclusions of Law

### A. Applicable Legal Standard

The portion of the IDEA invoked by the plaintiff, Plaintiff's Brief at 14, provides:

> In any action brought under this paragraph, the court —
> **(i)** shall receive the records of the administrative proceedings;
> **(ii)** shall hear additional evidence at the request of a party; and
> **(iii)** basing its decision on the preponderance of the evidence, shall grant
> such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C). "The court's principal function is one of involved oversight." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 989 (1st Cir. 1990). The court's task is "something short of a complete de novo review." *Id*. (citation omitted). The court must give "due weight" to the state agency's decision while making an independent decision. *Id*. at 989-90. This court applies the following standard of review:

> First, the Court carefully reviews the entire record of the due process hearing. Second, appropriate deference is given the Hearing Officer and his expertise, particularly with regard to factual determinations. Finally, the Court makes an independent decision whether the Hearing Officer's determination is supported by a preponderance of the evidence.

*Greenbush Sch. Comm. v. Mr. & Mrs. K,* 949 F. Supp. 934, 938 (D. Me. 1996). *Accord, B.A. v. Cape Elizabeth Sch. Comm*., 2000 U.S. Dist. LEXIS 7498 (D. Me. May 30, 2000) at *5-*6; *Bell v. Education in the Unorganized Territories*, Docket No. 00-160-B, slip op. (D. Me. March 27, 2001) at 3. The party challenging the hearing officer's determination bears the burden of demonstrating that the decision was erroneous. *Gonzalez v. Puerto Rico Dep't of Educ.*, 254 F.3d 350, 353 n.2 (1st Cir. 2001).

### B. Discussion

The plaintiff raises several issues in this proceeding. First, she asserts that "[t]he hearing officer's presumption that a post-accident remedy was even attempted, much less successfully implemented, is contrary to the evidence." Plaintiff's Brief at 2. This, she contends, renders his decision arbitrary and illogical. *Id*. She asserts that her expert witness "indicated . . . that the School's July 1, 2004 'monitor door to door' remedy, relating to special education transport, was **not** adequate." *Id*. (emphasis in original).

Next, the plaintiff contends that the hearing officer "made a number of procedural errors," *id*. at 3, including "overrul[ing] counsel's attempts at the outset of the hearing to call the bus driver and bus aide to show the unreasonableness of the IEP" and "refusing to require these subpoenaed witness[es] to testify;" and "prohibit[ing] detailed examination of the 2003 IEP." *Id*. at 3-4. "The refusal to hear any evidence of IEP deficiencies was itself[] a **prima facie** denial of due process." *Id*. at 4 (emphasis in original). In addition, she assets that the hearing officer "failed to establish meaningful non-arbitrary burden of proof [sic];" "erroneously ruled the adequacy of the IEP is 'not at issue;'" and "erroneously refused to acknowledge that an unremedied school policy of changing bus placement, without parental consent, constitutes an actionable violation of the IDEA." *Id*. at 12-13.

The plaintiff's problems begin with the statement of issues that she initially presented to the hearing officer. Nothing on that list, Record at 14-15, can reasonably be interpreted to seek "detailed examination of the 2003 IEP" or to allege "unreasonableness of the IEP." The testimony of Susan Fitzgerald cited by the plaintiff at page 3 of her brief — to the effect that the IEP "did not adequately address SB's vision limitations, did not designate a position (as opposed to a person) responsible for SB's safety . . . ; did not address SB's problems with surfaces, and did not provide for actual 'safety training' of SB and/or his ed tech" — simply was not relevant to the issues raised by the plaintiff,

either in her initial written statement of issues or in her counsel's descriptions during the administrative hearing of the remedy sought. She cannot raise these issues for the first time in this court.[4] *Rafferty v. Cranston Pub. Sch. Comm.*, 315 F.3d 21, 25 (1st Cir. 2002). Nor can the hearing officer's refusal to take evidence concerning alleged deficiencies in the IEP other than the one he addressed — the absence of a full description of S.B.'s transportation arrangements after the fall — be reviewed by this court, for the same reason. The testimony of the bus driver and the bus aide[5] could only have described the circumstances of S.B.'s transport on the day of his fall, which could not make any difference to the result sought by the plaintiff — the more specific description of the post-fall transportation arrangement in S.B.'s IEP.[6] These alleged errors do not entitle the plaintiff to relief from this court.

In addition, the plaintiff was given the opportunity to object to the terms of the IEP with respect to transportation in July 2004 and, for all that appears in the record, did not seek the more extensive written changes she now contends were legally required. Simple fairness requires that a parent raising claims under the IDEA not be allowed to mislead a school system into thinking that an IEP is acceptable on the particular point which the PET meeting she attended was convened to address, only to contend in formal proceedings two months later that the IEP was legally insufficient on that point.[7]

---

[4] Nor may she raise before the hearing officer issues that were not included in her notice of complaint. 20 U.S.C. § 1415(f)(3)(B).
[5] I note also that, contrary to the plaintiff's assertion, the record does not reflect that the hearing officer "refus[ed] to require these subpoenaed witness[es] to testify." Plaintiff's Brief at 4. Rather, he indicated that he "can get there," to their testimony, eventually, Transcript at 56, but at the end of the hearing day, without the testimony of these individuals having been given, counsel for the plaintiff told the hearing officer that no further proceedings were necessary, *id.* at 237-38.
[6] The plaintiff asserts, in passing, in a single paragraph of her brief under the heading "The Hearing Officer Erred when he Ruled he had No Jurisdiction because Remedies were Adequate," that "[a] hearing officer's ability to award relief under the Individuals with Disabilities Education Act (IDEA), including an award of compensatory education, is coextensive with that of court [sic]." Plaintiff's Brief at 21. It becomes clear in her reply memorandum that she is seeking compensatory education as a remedy from this court. Plaintiff's Reply Memorandum to Defendant South Portland School Department's Opposition to Appeal Decision, etc. ("Reply") (Docket No. 66) at 7-9. Compensatory education was not requested from the hearing officer, Record at 2 (Dispute Resolution Request Form); 14-16 (plaintiff's pre-hearing statement of facts, issues and conclusions); Transcript. For the reasons already discussed, the plaintiff may not demand a certain remedy for the first time when she appeals the result of an IDEA administrative hearing to the courts.
[7] The plaintiff seems to suggest, Plaintiff's Brief at 6, that the fact that S.B. was transported to school on the day of his fall on a
(*continued on next page*)

Even if that were not the case, the remainder of the issues discussed in the plaintiff's brief do not entitle her to relief. The conclusory assertion that the hearing officer "failed to establish meaningful non-arbitrary burden of proof," accompanied only by the quotation of three sentences from the hearing transcript, Plaintiff's Brief at 12, is insufficiently developed to merit further consideration by this court. *See, e.g., Dimarco-Zappa v. Cabanillas,* 238 F.3d 25, 34 (1st Cir. 2001) (issues asserted in conclusory fashion without developed argumentation will be considered waived); *Pearl Invs., LLC v. Standard I/O, Inc.* 257 F.Supp.2d 326, 355 (D. Me. 2003) (same).

With respect to the plaintiff's contention that the hearing officer "erroneously refused to acknowledge that an unremedied school policy of changing bus placement, without parental consent, constitutes an actionable violation of the IDEA," Plaintiff's Brief at 13, I assume that the change allegedly made without parental consent was a change from "short bus" transport, which was provided to S.B. in grade school and middle school, to "regular" bus transport to high school, *id.* at 9 (proposed finding of fact no. 16).[8] Whether this change was *per se* a violation of the IDEA or not, the plaintiff never sought a remedy from the hearing officer for the alleged violation other than a more detailed record of the transportation services provided to S.B. after his fall. Accordingly, whether the hearing officer "acknowledged" the alleged violation or not, no harm to the plaintiff could have flowed from the refusal to do so, under the circumstances of this case.

---

"regular" school bus was a *per se* violation of "his entitlement in the IEP to special education transportation." That is not the case. Under the IDEA, a free appropriate public education includes "related services," 20 U.S.C. § 1400(d)(1)(A), which in turn include transportation, 20 U.S.C. § 1401(26). "[R]emoval of children with disabilities from the regular educational environment" may occur only when the child's disability is such that education in regular classes cannot be achieved satisfactorily. 20 U.S.C. § 1412(a)(5)(A). Thus, the least restrictive environment required by the IDEA involves the freedom of the child to associate with able-bodied peers, *Sherri A.D. v. Kirby,* 975 F.2d 193, 207 n.23 (5th Cir. 1992), and accordingly "special education transportation" can conceivably mean occasional or even frequent transport on a "regular" school bus, perhaps with an aide or some other specific accommodation, perhaps not. In any event, it was not S.B.'s transport on a "regular" school bus that caused his fall, but rather the absence of someone to supervise his travel from the bus to the school door, or to ensure that he was delivered to a door free of slippery walkways.

[8] Neither party tells the court how long S.B. had been a student at South Portland High School, but he must have been attending that school at least since September 2003. He fell on December 12, 2003.

The plaintiff's assertion that no "post-accident remedy was even attempted, much less successfully implemented," Plaintiff's Brief at 2, in the nine months between S.B.'s fall and the service of her dispute resolution request is simply incorrect. The defendant school system, with no objection from the plaintiff, provided door-to-door monitored transportation for S.B. from the time he returned to South Portland High School until he transferred to another school district a few days after the administrative hearing. It is undisputed that this was a change in the nature of the transportation services provided to S.B. and it is clear that this change addressed the situation that resulted in injury to S.B., and, for all that appears in the record, did so successfully. There is no evidence that S.B. ever again fell while going to school or while going home from school during his remaining enrollment in the South Portland schools, or that he had any other problem with the transportation services supplied by the defendant. The plaintiff sees evidence of the lack of success of this "post-accident remedy" in the fact that S.B. was "again left unsupervised" on September 20, 2004, when he was caught in an elevator during a power failure. *Id.* at 2, 3, 20; *see also* Record at 94 (Incident Report). However, the elevator incident cannot serve as evidence of a "failure" of the defendant's plan for the provision of special education transportation services to S.B. S.B.'s movement within the school building is not accomplished by "special education transportation." It is an entirely separate concern, but the plaintiff's presentation conflates the two. *See generally id.* at 119, 133 (pages of IEP referring to special education transportation and goal for S.B. to "move through a congested hallway independently").

The parties' disagreement about Susan Fitzgerald's testimony with respect to the post-fall change in the nature of the transportation services provided to S.B. by the defendant mirrors the different approaches taken by the parties to this case. Fitzgerald did testify that the notation "monitor door-to-door" in S.B.'s IEP in connection with special education transportation was "probably not

adequate." Transcript at 199. She also testified that, if there were an adult to assist S.B. by verbal cuing while he got off the bus and into the building, that would be "an adequate, short-term solution." *Id*. at 228-29, 230, 231. It is not correct to characterize Fitzgerald's testimony, as the plaintiff does, as "indicat[ing] that the . . . 'monitor door to door' remedy, relating to special education transport, was **not** adequate." Plaintiff's Brief at 2 (emphasis in original). That being said, neither side finds enough support in Fitzgerald's testimony for its position with respect to the transportation services provided to S.B. to justify further analysis of that testimony.

The plaintiff also contends that the hearing officer was required to hear her proffered evidence about the circumstances of S.B.'s fall, the changes to his transportation that preceded it, and substantive challenges to the IEP independent of the transportation provision before he could reach the issue of remedies. *Id*. at 4, 20. The sole case cited by the plaintiff in support of this proposition, *Goldstrom v. District of Columbia*, 319 F.Supp.2d 5 (D.D.C. 2004), did not involve a situation in which the question addressed by the hearing officer was whether the plaintiff had already received the effective equivalent of the remedy sought through the hearing. In *Goldstrom* the parents sought reimbursement for the costs of a private school in which they had unilaterally placed their son. 319 F.Supp.2d at 6. The court held that the hearing officer, who had rejected the claim, must first determine whether there had been a violation of the IDEA and remanded the case. *Id*. at 8-9. Here, if there was no remedy sought by the plaintiff that would result in a change in the provision of a free and adequate public education to her son, it would have been a considerable waste of time and effort to first consider substantive issues raised by the plaintiff. Courts frequently assume an underlying liability *arguendo* and consider the availability of relief first; if no relief is available, it is unnecessary to reach the merits. That was the situation presented to the hearing officer in this case.

13

He committed no reversible procedural error by limiting his initial consideration to the issue of remedies, under the circumstances of this case.

The hearing officer also found that the remedy sought by the plaintiff — a change in the wording of S.B.'s IEP — was futile because "the family is moving out of the school district and is enrolling the student in another school." Record at 551 (Hearing Officer Decision). He observed that "[e]ven if there once was a controversy between these parties that did arise out of the IDEA, there is no longer any such controversy here." *Id*. at 552. The defendant emphasizes this mootness determination. Opposition at 9-10. The plaintiff responds that this case fits within the exception to the mootness doctrine for cases in which the harm is capable of repetition, yet evading review. Reply at 9. She asserts that "IEP claims for compensatory services have regularly been found to meet the 'capable o[f] repetition' exception." *Id*. However, as I have already noted, the plaintiff made no claim for compensatory services before bringing this case, and even then, in her initial brief, the mention is so brief and tangential, Plaintiff's Brief at 21, as not to merit consideration by this court.[9] It was only after the issue of mootness had been squarely presented by the defendant, Opposition at 9-10, that the plaintiff began to assert a claim for compensatory education.

As the First Circuit held in *Thomas R.W. v. Massachusetts Dep't of Educ.*, 130 F.3d 477 (1st Cir. 1997), a case cited by the plaintiff, Reply at 9, the exception to the mootness doctrine requires both that "the challenged action was in its duration too short to be fully litigated prior to its cessation" and that there was a reasonable expectation that the same party would be subjected to the same action again, 130 F.3d at 479-80. Here, the plaintiff has made no showing that there is such a reasonable expectation; indeed, S.B. had been, for all that appears in the record, enrolled in a school system other

---

[9] This case is distinguishable from the events in *MSAD No. 35 v. Mr. R.*, 321 F.3d 9, 18 (1st Cir. 2003), where the First Circuit held that a parent need not exhaust his or her claim for compensatory education in an administrative hearing when the claim did not exist at the time of the administrative hearing.

than that operated by the defendant since approximately a week before the hearing officer issued his decision in this case.  In addition, whether the challenged action is the change in S.B.'s transportation services when he started high school in September 2003 or earlier or the failure to record the change in those services after his fall in December 2003,[10] the duration of that action was not too short to be resolved through the administrative hearing process prior to S.B.'s transfer out of the defendant school system in November 2004.

The plaintiff also fails to specify what compensatory education she seeks.  The First Circuit in *Mr. R*, another case cited by the plaintiff, Reply at 10, said that "a child eligible for special education services under the IDEA may be entitled to further services, in compensation for past deprivations, even after his or her eligibility has expired."  321 F.3d at 17-18.  It is not at all clear how the defendant could provide "further services" to S.B. in light of the fact he is enrolled in another school district.  In *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184 (1st Cir. 1993), another case cited in this regard by the plaintiff, Reply at 10, the claimant, unlike the plaintiff here, was not asking the court to make the defendant comply with the IDEA in the future.  Instead, he asked "only that the court compensate him for rights that he claims the school district denied him in the past," specifically compensatory services for two years after the end of his eligibility.  *Id*. at 186, 189.

Similarly, the plaintiff has not shown that any additions to or changes in the wording of S.B.'s South Portland IEP, the injunctive relief sought by the plaintiff, would have any effect on the educational services which he is now receiving in a different school system.  The IDEA claim is moot.

---

[10] The plaintiff raises for the first time in her reply brief a claim that the defendant also violated the "stay put" provision of the IDEA. Reply at 10 n.5.  Issues raised for the first time in a reply brief will not be considered by this court.  *Cambridge Mut. Ins. Co. v. Patriot Mut. Ins. Co.*, 323 F.Supp.2d 95, 106 (D.Me. 2004).  I note as well that the stay-put provision applies only "during the pendency of any proceedings conducted pursuant to this section."  20 U.S.C. §1415(j).  Between the time when S.B.'s transportation was changed to a "regular" school bus and his fall, no proceedings were pending; the record reveals no complaint from the plaintiff.  After S.B.'s fall, no complaint was filed until the following September, so the stay-put provision could not have been violated during those nine months.  And in any event, S.B.'s transportation was changed after his fall to essentially the service he was receiving before the change, so no violation of the stay-put provision could have occurred at that time either.

15

**Conclusion**

Because the plaintiff's IDEA claim has been rendered moot by her enrollment of S.B. in a school system other than that operated by the defendant, and, in any event, because the issues properly asserted in this request for judicial review do not entitle her to relief for the reasons discussed above, I recommend that judgment be entered in favor of the defendant.

*NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of February, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge